UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:25-cv-00041-D

| | |
|---|---|
| Gastroenterology East, P.A., Donald Tsynman, and Geoffrey You,<br><br>Plaintiffs,<br><br>v.<br><br>United Surgical Partners International, Inc., Covenant Surgical Partners, Inc., Covenant Practice Management, LLC, Gastroenterology East MSO, LLC, and Carolinas Endoscopy Center, LLC,<br><br>Defendants. | **AMENDED COMPLAINT** |

## INTRODUCTION

1. To complete a massive buyout of a network of surgery centers nationwide, United Surgical Partners International, Inc. needed something significant from Greenville-based physicians Dr. Donald Tsynman and Dr. Geoffrey You, the physician owners of Gastroenterology East, P.A.

2. Dr. Tsynman and Dr. You had received valuable non-compete provisions protecting their medical practice when selling some components of it to Covenant years ago.[1] Now, as part of USPI's nationwide buyout, USPI wanted to

[1] Defendants Covenant Surgical Partners, Inc. and Covenant Practice Management, LLC are collectively referred to as "Covenant" throughout. "Gastro East" is used to refer to Plaintiff Gastroenterology East, P.A., and "USPI" for Defendant United Surgical Partners International, Inc.

acquire Covenant. But the existing non-competes, along with other terms, stood in the way. If USPI was going to purchase Covenant, it needed to get those terms modified.

3. In an attempt to get what it needed, USPI made Gastro East a deal: If Gastro East executed documents that USPI believed it needed to acquire Covenant, USPI would grant Gastro East an option to acquire two critical assets previously sold to Covenant at appraised value. Those assets included a 51% membership (i.e., ownership) interest in Gastroenterology East MSO, LLC, and a 51% membership interest in Carolinas Endoscopy Center, LLC.

4. Relying on that assurance, which USPI confirmed in writing, Gastro East signed documents prepared by USPI that, according to USPI, had to be signed by Gastro East immediately.

5. Ultimately, as it turned out, USPI did not actually need anything from Gastro East. Instead, it needed something from Dr. Tsynman and Dr. You in their individual capacities. In USPI's haste to relieve Covenant from the broad scope of the non-competes, USPI overlooked an important detail: a 2021 transaction, which Covenant specifically acknowledged and consented to, in which Dr. Tsynman and Dr. You—not Gastro East—had received the non-compete protections that USPI sought to avoid.

6. In light of that 2021 transaction, many of the documents that USPI prepared and demanded that Gastro East immediately sign were fatally defective

and, thus, invalid. With this entire picture now fully in view,[2] Gastro East, Dr. Tsynman, and Dr. You bring this action to hold USPI to its word and, moreover, to resolve ongoing disputes between the parties as to their rights and obligations, if any, in connection with the invalid documents prepared by USPI.

**PARTIES, JURISDICTION, AND VENUE**

7. Gastro East is a North Carolina professional corporation with its principal place of business located in Greenville, North Carolina.

8. Dr. Tsynman is a citizen and resident of Greenville, North Carolina.

9. Dr. You is a citizen and resident of Raleigh, North Carolina.

10. Upon information and belief, USPI is a Delaware corporation with its principal place of business located in Addison, Texas. USPI regularly conducts business in North Carolina, including through its ownership interests in North Carolina-based medical practices. The allegations below arise out of USPI's conduct in or directed towards North Carolina, causing injury in North Carolina.

11. Upon information and belief, Defendant Covenant Surgical Partners, Inc. is a Delaware corporation with its principal place of business located in

---

[2] On March 28, 2025, the Court granted the parties' Joint Motion to Stay and stayed this action for a period of 90 days, which was later extended through October 15, to allow the parties to continue their discussions toward a potential resolution of this action. *See* D.E. 18. In the course of reexamining every aspect of the structures of the relevant entities with an eye toward potential resolutions of this dispute, the undersigned identified the issue prompting this amendment (i.e., the same issue that USPI overlooked in its preparation of the March 28, 2024 documents, as described below). To correct the record and resolve any potential confusion prior to the filing of any responsive pleading, Plaintiffs have filed this amended complaint immediately following the expiration of the stay period.

Nashville, Tennessee. Covenant Surgical Partners regularly conducts business in North Carolina, including through its ownership interests in North Carolina-based medical practices. The claims below arise out of Covenant Surgical Partners' conduct in, or directed towards, North Carolina, which caused injury in North Carolina.

12. Upon information and belief, Defendant Covenant Practice Management, LLC is a Delaware limited liability company with its principal place of business located in Nashville, Tennessee. Covenant Practice Management regularly conducts business in North Carolina, including through its ownership interests in North Carolina-based medical practices. The claims below arise out of Covenant Practice Management's conduct in, or directed towards, North Carolina, which caused injury in North Carolina.

13. Defendant Gastroenterology East MSO, LLC is a Delaware limited liability company with its principal place of business located in Greenville, North Carolina. Its members include Covenant Practice Management, LLC, Dr. Tsynman, and Dr. You.

14. Defendant Carolinas Endoscopy Center, LLC is a Delaware limited liability company with its principal place of business located in Greenville, North Carolina. Its members include Covenant Surgical Partners, Inc., Dr. Tsynman, and Dr. You.

15. Venue in this Court is proper under 28 U.S.C. § 1391(b). This action was originally filed in Pitt County Superior Court, where jurisdiction and venue

would, in the event this Court lacked jurisdiction, be proper under N.C. Gen. Stat. §§ 1-75.4, 1-77, 1-79, 1-80, and 1-82.[3]

## FACTUAL BACKGROUND

### *Gastro East*

16. Established in 2005, Gastro East provides gastroenterology care to patients in eastern North Carolina. For nearly two decades, Gastro East has built its reputation—and a significant footprint in this medically underserved portion of the State—by coupling high quality patient care with the latest medical technology.

17. Until 2017, Gastro East's practice included three components, all of which existed entirely within Gastroenterology East, P.A. First and foremost was Gastro East's medical practice division, which included in-office patient care, counseling, and non-surgical gastroenterology treatment. Second, Gastro East included an ambulatory surgical center division. This division allowed Gastro East to perform same-day surgical care and more advanced treatment to meet patient needs. Third, the Gastro East umbrella included a substantial managerial and administrative component to support both the medical practice and ambulatory surgical divisions. With this structure, Gastro East, along with the physicians,

---

[3] In light of the corporate actions purportedly taken by Carolinas Endoscopy Center, LLC and Gastroenterology East MSO, LLC (limited liability companies with North Carolina members) in connection with the invalid March 28, 2024 documents, as well as the relief Plaintiffs seek in connection with those documents, there are significant questions as to whether diversity jurisdiction exists.

providers, and staff dedicated to its mission, quickly became the leading provider of these services in eastern North Carolina.

### *Gastro East and Covenant Become Strategic Partners*

18. In furtherance of its growth and commitment to patients in eastern North Carolina, Gastro East ultimately found a strategic partner in Covenant, an owner and operator of ambulatory surgery centers and other physician services focusing on gastroenterology and other patient care.[4]

19. At that time, Gastro East believed that Covenant's experience and understanding of the operation of ambulatory surgery centers could bring efficiencies, economies of scale, and other benefits to Gastro East and its patients.

20. Gastro East and Covenant closed their transaction on January 1, 2017. As part of that transaction, Gastro East's three components, described above, were separated into individual entities.

21. Gastroenterology East, P.A. remained the medical practice division, and its ownership remained unchanged—that is, Covenant did not acquire any ownership interest in Gastro East's medical practice.

22. The ambulatory surgery center was acquired by Carolinas Endoscopy Center, LLC ("ASC," an acronym referring to the ambulatory surgical center), an entity wholly owned by Gastro East. Gastro East then sold a 51% interest in ASC

---

[4] In or about August of 2017, after its investment in Gastro East, Covenant was acquired by the investment firm Kohlberg Kravis Roberts & Co. L.P. ("KKR").

to Covenant Surgical Partners, Inc. Gastro East retained a 49% ownership interest in ASC.

23. Gastro East's managerial and administrative arm was acquired by Gastroenterology East MSO, LLC ("MSO"), which was initially wholly owned by Gastro East. Gastro East then conveyed 51% of the membership interests in MSO to Covenant Practice Management, LLC, retaining 49% of the membership interests.

24. At the time of its 2017 transaction with Covenant, Gastro East was owned entirely by Dr. Jack Cole. In 2021, however, Dr. Cole sold his interest in the practice to Dr. Tsynman and Dr. You, which changed the ownership of Gastro East, the ASC, and the MSO. The 2021 transaction involved three components.

25. First, Gastro East distributed its ownership interests in ASC and MSO directly to Dr. Cole. As a result, Dr. Cole individually owned the 49% ownership interest in each of ASC and MSO, the entirety of the outstanding "Class A Units" of each entity, along with his 100% ownership interest in Gastro East, pursuant to a December 17, 2021 Dividend Distribution Agreement. *See* Exhibit 1. MSO, ASC, and Covenant executed the Dividend Distribution Agreement, memorializing their consent to those distributions.

26. Second, and on the same day, Dr. Cole, Dr. Tsynman, and Dr. You entered into an Equity Purchase Agreement.[5] Pursuant to that Equity Purchase

---

[5] The Equity Purchase Agreement contains sensitive financial information and other confidential details of the private transaction between Dr. Cole, a nonparty, and Dr. Tsynman and Dr. You, and for that reason, is omitted here.

Agreement, Dr. Cole sold his interest in Gastro East and the Class A Units in MSO and ASC that had just been distributed pursuant to the Dividend Distribution Agreement, in equal shares to Dr. Tsynman and Dr. You. Gastro East, MSO, ASC, and Covenant executed the Equity Purchase Agreement, once again "acknowledging [their] consent to the transactions contemplated" therein.

27. Finally, and also on December 17, 2021, the limited liability company agreements (i.e., operating agreements) for MSO and ASC were amended to approve these transactions and memorialize that, from December 17, 2021 forward, the Class A Members of MSO and ASC would be Dr. Tsynman and Dr. You, each holding 24.5 Class A Units, for a combined 49% stake in those entities. Each of these amendments was executed by Covenant as the entities' sole Class B Member. *See* Exhibits 2 and 3.

28. Thus, from December 17, 2021 to the present, Gastro East has not had a membership interest or other equity position in either MSO or ASC.

### ***USPI Hurriedly Acquires Covenant***

29. After the 2017 transaction with Covenant and the 2021 buyout of Dr. Cole, Gastro East continued to experience significant growth and its relationship with Covenant was, for the most part, mutually beneficial.

30. In the spring of 2024, however, things changed. In late February of that year, Gastro East was informed that USPI—an entity that Gastro East had not previously dealt with—had plans to acquire Covenant from KKR.

31. Given that USPI's acquisition of Covenant would result in a change in control and a change in operations of the majority interest holder in MSO and ASC, teams from USPI and Covenant separately traveled to Greenville to discuss the potential sale and its impact on Gastro East, MSO, and ASC.

32. During the course of the Greenville visit on March 21, 2024, representatives from Covenant indicated that to pave the way for USPI's acquisition of Covenant, a number of the terms from the 2017 transaction would need to be modified—and would need to be modified quickly—to allow the USPI transaction to close. During that visit, however, Covenant did not provide any documentation or specific information about which of the 2017 terms would need to be modified.

33. That information was not revealed until March 24, 2024, the Sunday following Covenant's Greenville visit with Gastro East. On that date, USPI's counsel shared specifically what was being asked of Gastro East, Dr. Tsynman, and Dr. You.

34. USPI and Covenant's request was broad and the deadline was short. USPI and Covenant were asking for amendments to the 2017 equity and contribution agreements for both entities to reduce the scope of non-compete provisions contained in those agreements, as well as amendments to the operating agreements of MSO and ASC to similarly reduce those non-competes. In addition, USPI and Covenant were asking for the execution of written consents of the members and board of managers of MSO and of the members of ASC, an

amendment to an administrative services subcontract between MSO and ASC, and an assignment, assumption, and amendment of a management agreement between ASC and Covenant/USPI.

35. USPI had prepared documents that it believed would effectuate its requests. These documents, according to USPI and Covenant, needed to be executed a mere four days later, by Thursday, March 28, 2024, to avoid jeopardizing USPI's acquisition of Covenant. Upon information and belief, the reason the transaction needed to close so quickly was to avoid conflict with an impending change in another state's law that would have significantly complicated, if not prevented, USPI's acquisition of Covenant.

36. Gastro East made it known immediately that it was not interested in the substance of USPI's requests and was uncomfortable with the compressed timeline. Those concerns were voiced in a series of calls with representatives of Covenant and USPI on Monday, March 25, 2024. They were also reiterated in follow-up emails between Leisa Fuller, Gastro East's consultant on the transaction, and USPI's counsel. An example of such an email is attached as Exhibit 4.

37. In those emails, Gastro East continued to object to USPI's aggressive timeline, including pointing out to USPI's legal counsel that Gastro East was left with inadequate time to review USPI's proposed documents. *See id.*

38. As part of those initial discussions, Gastro East broached the topic of consideration—that is, what Gastro East would receive in exchange for agreeing to USPI's substantial requests.

39. Gastro East's representatives raised the prospect of a buyout—first of the non-compete agreements that were part of the 2017 transaction, then of Covenant's interest in MSO and ASC.

40. By Wednesday, March 27, 2024, the parties' discussions had focused on the latter. Gastro East, Dr. Tsynman, and Dr. You believed it was important that, should Gastro East's relationship with Covenant ultimately not work out following USPI's acquisition, they would have the ability to buy back all the components of their practice at a reasonable price from USPI. To the parties, and to use USPI's words, that meant a price "determined based on a fair market value conducted by an independent third party." A true and accurate copy of the communications between Gastro East and Nick Petersdorf, USPI's VP of Corporate Development, discussing the buyout and ultimately memorializing the parties' agreement are attached as Exhibit 5.

41. To that end, Ms. Fuller had multiple calls about this buyback option with Covenant's Regional Vice President Carol Crump and Covenant's Senior Vice President for Strategy and Operations Felisha Faulkner. They further discussed the importance of this buyback option to Gastro East, as well as how to memorialize this buyback option given the extreme time pressures created by USPI's short-fuse requests.

42. Ms. Fuller also discussed the buyback option directly with Mr. Petersdorf. Mr. Petersdorf, joined on at least one call by Ms. Crump, confirmed that a buyback option was familiar to USPI, and that USPI allows a number of buybacks

annually. On that call, Mr. Petersdorf confirmed that USPI would agree to a buyback option for Gastro East, and confirmed again that the buyback price would be the fair-market value of Covenant's interest in MSO and ASC.

43. Given the USPI-created urgency and extreme time pressure of just a couple days remaining before USPI's deadline, Gastro East's buyback option was memorialized by email. On Thursday, March 28, 2024, the day of USPI's deadline to accept its proposal, Mr. Petersdorf confirmed that Gastro East would have the option to buy back the 51% interests in MSO and ASC that were previously sold to Covenant "based on fair market value by a third party firm/bank." *See* Exhibit 5.

44. With the buyback option expressly confirmed in writing by USPI, Gastro East executed the documents that USPI had drawn up and presented that same day, which USPI indicated would allow it to acquire Covenant.[6] Thus, having gotten what it needed from Gastro East (or so USPI thought), USPI acquired Covenant.

***USPI's Attempted Bait and Switch***

45. Following USPI's acquisition of Covenant, USPI's President and CEO Brett Brodnax hosted an introductory call with Dr. Tsynman, Dr. You, and Ms. Fuller. During that call, Gastro East made it clear to Mr. Brodnax that Gastro East intended to exercise its option to reacquire the interest previously sold to Covenant

---

[6] Copies of the documents executed by Gastro East in reliance on the agreement to allow the repurchase are attached as Exhibit 6. These documents, which, upon information and belief, were countersigned by Covenant and/or USPI as applicable, are collectively referred to as the "March 28 Documents."

in 2017—that is, the buyback option to which USPI had explicitly agreed in exchange for Gastro East executing the March 28 Documents. Mr. Brodnax's only response was to suggest that the parties more formally memorialize their previous agreement on the buyback option.

46. On July 1, 2024, Gastro East shared a document reflecting the material terms previously agreed to by Nick Petersdorf on behalf of USPI. A copy of the email thread transmitting that document and the document itself are attached as Exhibits 7 and 8, respectively.

47. Thirty days later, on July 31, 2024, USPI revealed its true intentions on the buyback option. In a draft document shared with Gastro East that day, USPI sought to radically alter the terms—and the price—of the buyback option. Rather than agreeing to a buyback at an appraised price, as the parties had agreed, USPI's draft sought a different price: an arbitrarily set option price. As USPI later revealed, that arbitrarily set option price would be more than $41 million—more than *double* the expected appraised value of Covenant's interest in MSO and ASC.

48. In the weeks that followed, moreover, USPI and Mr. Brodnax made clear that USPI had no intention—and, indeed, never had any intention—of honoring the parties' agreement on the buyback option.

49. Instead, in late summer, USPI unilaterally began the process of integrating MSO and ASC into its broader group of acquired practices, which included extensive—and also disruptive—efforts to transition MSO and ASC to USPI's preferred billing, insurance, and accounting platforms. When Gastro East

questioned whether these efforts were necessary in light of the agreement to allow the repurchase of Covenant's interest in MSO and ASC, USPI responded in ways that made clear it never intended to abide by that prior agreement.

50. On a September 16, 2024 call with Gastro East, Mr. Brodnax suggested that integration could stop and the parties could work towards a repurchase of Covenant's interest in MSO and ASC, but only at a price of at least $41 million.

51. Still hopeful that USPI's commitment was not just a misrepresentation to induce Gastro East to agree to the March 28 Documents, Gastro East pushed for answers.

52. On October 2, 2024, Dr. Tsynman reminded Mr. Brodnax by email about the parties' March 28 agreement on the buyback option. Dr. Tsynman further informed Mr. Brodnax and USPI that Gastro East had engaged VMG Health to appraise the 51% interests in MSO and ASC. A copy of Dr. Tsynman's email, and the responses described below, are attached as Exhibit 9.

53. In response, Mr. Brodnax—completely ignoring the reference to Mr. Petersdorf's agreement on behalf of USPI—responded that USPI would only allow a buyback at the $41 million price. Anything else, Mr. Brodnax contended, "would make no sense for us[.]" *Id.*

54. On October 8, 2024, Dr. Tsynman again pointed to Mr. Petersdorf's written agreement on behalf of USPI. More than a week later, Mr. Brodnax again ignored USPI's previous confirmation of the agreement. *See id.*

55. After yet another round of discussion, Mr. Brodnax again maintained that the deal previously struck between Gastro East and USPI "would make no sense for USPI" and refused to proceed with the agreed-upon buyback option. *See id.*

56. Following Mr. Brodnax's revelations about USPI's bait and switch, Mr. Brodnax and USPI have begun forcing the integration of Gastro East's billing, accounting, and payroll systems with the systems used by USPI in other ASCs and MSOs. All of this would cause significant disruption in Gastro East's practice and, in light of the agreed-upon buyback option, is entirely improper and unnecessary.

57. Perhaps more fundamentally, USPI does not even have a contractual basis to integrate. In USPI's rush to acquire Covenant, it made a critical—and fatal—error in the documents it prepared: USPI did not account for the 2021 change in membership of MSO and ASC. *See supra* pp. 7–8, ¶¶ 25–27.

58. Each of the March 28 documents were prepared by USPI based on the assumption that Gastro East remained the Class A Member of MSO and ASC. But as explained above, Gastro East has had no membership interest in MSO and ASC since December of 2021.

59. As a result, each of the actions purportedly taken by MSO and ASC, including USPI's hurriedly prepared modification of non-competes, amendments to administrative contracts, and other actions demanded by USPI, are fatally defective and, thus, invalid, because USPI's documents did not even reflect the correct parties to those transactions.

## CAUSES OF ACTION

### COUNT 1
### Breach of Contract / Breach of Duty of Good Faith and Fair Dealing (USPI and Covenant)

60. Plaintiffs re-allege and incorporate by reference all preceding paragraphs.

61. As described above, during the course of USPI's acquisition of Covenant, USPI agreed to allow Gastro East to repurchase Covenant's interest in MSO and ASC for the appraised value of that interest.

62. In exchange for and based on USPI's assent to the terms of the buyback option to repurchase Covenant's interest in MSO and ASC, Gastro East agreed to execute the March 28 Documents.

63. USPI's agreement to the repurchase terms is a binding contract supported by adequate consideration.

64. Gastro East fully performed its obligations under this contract by executing and returning the March 28 Documents prepared by USPI. The fact that those agreements did not fully accomplish USPI's ultimate goal because they did not properly reflect Dr. Tsynman and Dr. You's ownership of ASC and MSO, as discussed herein, is not a failure of consideration. USPI prepared the March 28 Documents and had—or at a minimum, could have had with appropriate inquiry to Covenant or KKR—full knowledge of the 2021 transaction to which Covenant gave its express written consent, and those documents, at least as to Gastro East, bound Gastro East to their terms.

65. USPI has breached the contract, including its duty of good faith and fair dealing, and deprived Gastro East of the benefit of the parties' bargain by refusing to allow the repurchase of Covenant's interest in MSO and ASC as agreed.

66. As a result of these acts, Gastro East has been damaged in an amount in excess of $25,000. Those damages, however, would not wholly compensate Gastro East for the full loss incurred as a result of USPI and Covenant's breach. Accordingly, Gastro East is entitled to specific performance of its agreement with USPI on behalf of Covenant. Given that this equitable relief would plainly affect Covenant's rights, Covenant is also a necessary party to this claim.

## COUNT 2
## Declaratory Judgment
## (All Defendants)

67. Plaintiffs re-allege and incorporate by reference all preceding paragraphs.

68. Since 2021, Dr. Tsynman and Dr. You have each owned a 24.5% membership interest in MSO and ASC. Together, Dr. Tsynman and Dr. You are the only Class A Members of MSO and ASC.

69. Since 2021, Gastro East has not been a member of MSO or ASC.

70. The March 28 Documents incorrectly identify Gastro East as the "Class A Member" of MSO and ASC.

71. Dr. Tsynman and Dr. You's execution of the March 28 Documents was not, and was never intended to be, execution in either their individual capacities or as Class A Members of MSO and ASC. Instead, the March 28 Documents identify

Gastro East as the Class A Member of MSO and ASC, and Dr. Tsynman and Dr. You's titles and signatures appear on the March 28 Documents only in their capacity as the owners of Gastro East, not MSO or ASC.

72. As further indication that the March 28 Documents were fatally defective, the titles recited in those signature blocks for Dr. Tsynman and Dr. You reflect their positions within Gastro East, not MSO or ASC:

**CLASS A MEMBER:**

**GASTROENTEROLOGY EAST, PA**

DocuSigned by:
By: Donald Tsynman
DC4F8F7CB6E440E...
Name: Donald Tsynman
Title: MD

DocuSigned by:
By: Geoffrey You
48FBCF6A887E460...
Name: Geoffrey You
Title: Physician owner

73. Furthermore, the failure of the true Class A Members of MSO and ASC in their proper capacities to execute the March 28 Documents is pervasive throughout those documents. For example, amendments to the operating agreements of MSO and ASC are executed by Gastro East as the "Class A Member." Gastro East was not the Class A Member of MSO or ASC, rendering those amendments fatally defective. *See* Exhibit 6, Second Amendment to Limited Liability Agreement of Gastroenterology East MSO, LLC, and Second Amendment to Limited Liability Agreement of Carolinas Endoscopy Center, LLC.

74. Likewise, the Written Consent of the Board of Managers and Members of Gastroenterology East MSO, LLC, and the Written Consent of the Members of Carolinas Endoscopy Center, LLC, were not executed by the Class A Members of ASC and MSO. Those, too, are fatally defective.

75. The approval of the members of MSO and ASC was required for those entities to execute the Assignment, Assumption and Amendment of Management Agreement and First Amendment to Administrative Services Subcontract, which form the basis of USPI's demands to integrate as discussed above. Because the written consents purporting to provide that approval are fatally defective and, thus, invalid, the Assignment, Assumption and Amendment of Management Agreement and First Amendment to Administrative Services Subcontract executed by MSO and ASC are, likewise, invalid.

76. Given the fatal defects described above, the end result that USPI has brought upon itself is the following: (1) the agreements to modify the non-competes that USPI so hastily demanded are invalid, leaving the original non-competes remaining in full effect; (2) USPI's integration efforts and demands, which Gastro East has consistently and unequivocally opposed, are improper and without any contractual basis; and (3) the execution and Covenant's partial performance of the Assignment, Assumption and Amendment of Management Agreement and First Amendment to Administrative Services Subcontract violate the operating agreements of MSO and ASC.

77. Despite the above, and as shown by their collective efforts towards integration, USPI, Covenant, and Covenant-controlled MSO and ASC, believe that the March 28 Documents were properly executed and remain enforceable. Thus, an actual dispute and controversy exists between the parties that a declaratory judgment would resolve, removing any uncertainty with respect to the parties' rights and obligations, if any, under the March 28 Documents. *See* 28 U.S.C. § 2201(a); N.C. Gen. Stat. § 1-253 *et seq*.

78. Accordingly, under 28 U.S.C. § 2201(a) or, in the event this Court lacks jurisdiction, under N.C. Gen. Stat. § 1-253 *et seq*., the Plaintiffs are entitled to a declaration that:

a. the Second Amendment to Limited Liability Company Agreement of Gastroenterology East MSO, LLC was not properly executed by the Class A Members of MSO and is, therefore, invalid;

b. the Second Amendment to Limited Liability Company Agreement of Carolinas Endoscopy Center, LLC was not executed by the Class A Members of ASC and is, therefore, invalid;

c. the Written Consent of the Board of Managers and Members of Gastroenterology East MSO, LLC was not properly executed by the Class A Members of MSO and is, therefore, invalid as a consent of the members;

d. the Written Consent of the Members of Carolinas Endoscopy Center, LLC was not properly executed by the Class A Members of ASC and is, therefore, invalid;

e. approval of the Class A Members of MSO was required for MSO to execute the First Amendment to Administrative Services Subcontract, and the failure of MSO to obtain the approval of its Class A Members renders the MSO's execution of the First Amendment to Administrative Services Subcontract invalid; and

f. approval of the Class A Members of ASC and MSO was required for ASC and MSO to execute the Assignment, Assumption and Amendment of Management Agreement, and the failure of ASC and MSO to obtain the approval of its Class A Members renders the ASC and MSO's execution of the Assignment, Assumption and Amendment of Management Agreement invalid.

## COUNT 3
## Declaratory Judgment / Rescission / Inducement by Misrepresentation (All Defendants)

79. Plaintiffs re-allege and incorporate by reference all preceding paragraphs.

80. Plaintiffs allege this claim in the alternative to Count 1.

81. As parties to a commercial transaction, the law imposed a duty on USPI to provide Gastro East with accurate representations or, at a minimum, representations that were not negligent or fraudulent.

82. As described above, USPI's representation as to the buyback option was materially false. Upon information and belief, and as further demonstrated by USPI's later conduct and statements described above, at the time USPI made this material misrepresentation, USPI intended to deceive Gastro East and had no intention of allowing Gastro East to repurchase Covenant's interest in MSO and ASC at appraised value. Instead, upon information and belief, and as further demonstrated by USPI's later conduct and statements described above, Mr. Petersdorf's material misrepresentation on behalf of USPI on March 27, 2024 was made for the sole purpose of inducing Gastro East to execute the March 28 Documents.

83. Gastro East executed the March 28 Documents in reliance on USPI's material misrepresentation as to the buyback option. As USPI was fully aware, without USPI's agreement to the buyback option, Gastro East would never have executed the March 28 Documents. As USPI was also aware, USPI's agreement to the buyback option was material to Gastro East's decision to execute the March 28 Documents, induced Gastro East to execute the March 28 Documents in reliance on USPI's agreement, and, indeed, went to the very heart of Gastro East's decision to execute the March 28 Documents.

84. Upon information and belief, and as further demonstrated by USPI's later conduct and statements described above, USPI's misrepresentation was fraudulent in that it was reasonably calculated to deceive, made with intent to deceive, and did in fact deceive Gastro East and induce Gastro East to execute the

March 28 Documents. At a bare minimum, USPI's misrepresentation was negligent or grossly negligent and made with reckless disregard and without any reasonable care or concern for the fact that it would induce Gastro East to execute the March 28 Documents.

85. Gastro East's reliance on USPI's misrepresentation as to the buyback option was more than reasonable under the circumstances. USPI's material misrepresentation was made by a USPI representative who explicitly stated that he had authority to speak for and bind USPI and did, in fact, have authority to speak for and bind USPI. As further described above, the terms of the buyback option were the subject of significant discussion and negotiation, were sufficiently defined, and were reduced to writing. Moreover, given the nature of the misrepresentation—USPI's agreement to a negotiated term, where only USPI could have known whether it intended to actually honor its agreement—Gastro East had no ability to make further inquiry into the internal discussions or decision-making process of USPI to uncover USPI's true intentions. Under these circumstances and those described above, Gastro East's reliance was more than reasonable.

86. As additional circumstances warranting rescission, the consideration for the execution of the March 28 Documents is non-existent or, alternatively, has failed as a result of USPI's refusal to honor its agreement to the buyback option. The only consideration given for Gastro East's execution of the March 28 Documents was USPI's agreement to the buyback option. In light of USPI's misrepresentation, the only consideration for the March 28 Documents was either

fraudulent or, at best, illusory, and thus, there was either a failure of consideration or lack of consideration in the March 28 Documents, constituting additional circumstances justifying the equitable remedy of rescission.

87. USPI has refused—and, to date, continues to refuse—to honor the buyback-option agreement. Moreover, USPI is now forcing the integration of Gastro East's practice with its own as though the March 28 Documents are valid and enforceable. Thus, an actual dispute and controversy exists between the parties that a declaratory judgment would resolve, removing any uncertainty with respect to the parties' rights and obligations, if any, under the March 28 Documents. *See* 28 U.S.C. § 2201(a); N.C. Gen. Stat. § 1-253 *et seq.*

88. Accordingly, under 28 U.S.C. § 2201(a) or, in the event this Court lacks jurisdiction, under N.C. Gen. Stat. § 1-253 *et seq.*, the Plaintiffs are entitled to a declaration that as an equitable remedy for USPI's misrepresentation, the failure of consideration or lack of consideration for the execution of the March 28 Documents, and other grounds discussed above, Gastro East is entitled to rescission of the March 28 Documents, including the amendments to the non-compete provisions contained therein.

## **<u>JURY TRIAL DEMANDED</u>**

89. Gastro East demands a jury trial on all triable issues of fact.

## REQUEST FOR RELIEF

Plaintiffs respectfully request that the Court:

(a) grant Gastro East specific performance allowing Gastro East to exercise its option to acquire Covenant's interest in MSO and ASC as agreed or, in the alternative, award Gastro East its damages for breach of contract and breach of the duty of good faith and fair dealing;

(b) enter a declaratory judgment confirming that the March 28 Documents are fatally defective and, thus, invalid, as described above;

(c) in the alternative, enter a declaratory judgment granting rescission of the March 28 Documents, including the amendments to the non-compete provisions contained therein;

(d) award the costs of bringing this action as allowed by law, including attorneys' fees to the extent allowable; and

(e) award any and all other relief as the Court deems appropriate.

Respectfully submitted the 17th day of October, 2025.

**POYNER SPRUILL LLP**

By: /s/ Andrew H. Erteschik
Andrew H. Erteschik
N.C. State Bar No. 35269
aerteschik@poynerspruill.com
/s/ Colin R. McGrath
Colin R. McGrath
N.C. State Bar No. 47936
cmcgrath@poynerspruill.com
N. Cosmo Zinkow
N.C. State Bar No. 53778
nzinkow@poynerspruill.com
301 Fayetteville St., Suite 1900
Raleigh, NC 27601
Telephone: 919.783.6400
Facsimile: 919.783.1075

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that I have electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel and parties of record.

This the 17th day of October, 2025.

/s/ Andrew H. Erteschik
Andrew H. Erteschik